Good morning. My name is Alan Thelheimer of the firm of Thelheimer & Eichen, LLP. We represent the Appellate Synergy, Inc. I would like to reserve five minutes for rebuttal. Plaintiff Appellate Synergy, Inc., a Pennsylvania resident, filed a complaint against ZSAssociates, which is an Illinois corporation, or a corporation with its headquarters in Illinois, but with an office in Pennsylvania, which makes it a Pennsylvania resident. The plaintiff also filed a simultaneous motion proclamatory injunction. The defendant, ZSAssociates, filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12b-7 and Federal Rule of Civil for dismissal on the doctrine of forum nonconvenience. Thereafter, the plaintiff filed a motion for discovery. The court below, without hearing or argument, denied plaintiff's motion for discovery, granted the motion to dismiss the complaint, and denied the preliminary court abuse its discretion in dismissing for failure to join indispensable parties. Weren't the two employees in India that ZS hired indispensable? In order to be an indispensable party, it is required under Rule 19 that they be, if you read Rule 19, they must be a required party. In order to be an indispensable party, you must first be a required party. I'd like to quote Rule 19. A person who is subject to service of process, those are the first words of Rule 19, a person who is subject to service of process, you must be subject to service of process to be a required party under Rule 19. That is definitional. The judge ignored it. Now, the two Indian gentlemen... Wait, wait, doesn't that mean that when a necessary party cannot be feasibly joined because the party cannot be served, the dismissal would be appropriate? No, sir. That's exactly what it doesn't mean. You can't have a required party who cannot be served. That's the first issue. You cannot have a party... So you can only be indispensable... If you're required. If you're required... And can be served. That was my point. Yes, sir. You have to be subject to service before you become an indispensable party. That's correct. But going beyond that, just because you're a joint tortfeasor does not make you an indispensable party. The Supreme Court of the United States in Temple versus Sinus Corp. Ltd. 498 U.S. 5 at page 7 has held and repeatedly held that a joint tortfeasor does not necessarily make you a required party. Now, this is a suit by an American company under the Lanham Act seeking an injunction and other relief under the Lanham Act. There's no Lanham Act in Japan, excuse me, in India. There's no Lanham Act available in that court. The court did not even look at the relief that was available in the Indian courts. Mr. Feldheimer, if I were to disagree with you on the point you just made that you have to be subject to service in order to be indispensable... Yes, sir. To hypothetically accept that disagreement, aren't these two employees in India indispensable parties? No, sir. Why not? First of all, this is an action by an American company against another American company who we say itself, without reference to anything done or not done by the Indian gentleman, we want the court to look to relief from actions being taken by the American company. We are asking for an injunction against an American company. We are asking for relief under an American statute that doesn't apply in India. Doesn't that relief require ZS to terminate the employment of the two individuals who had ZS hired from Synergy? No. It requires them not... Synergy, I'm sorry. I'm sorry? I think it's Synergy, isn't it? Synergy. Synergy? No, you just take the R out. Synergy. Everybody pronounces it with the R. I think it's a little play on words. All right. Well, you now brought up a point about the Lanham Act. Didn't Dr. Wad have an affidavit he put in about how relief is available in India? You're wrong. And you didn't rebut it with the other expert, I guess, to the extent you can be an expert at this point. Well, first of all, I asked for discovery and I asked for an opportunity to look into all this, but Your Honor, let me start out with what Dr. Wad said. First of all, he said ZS is not subject to jurisdiction in India. ZS said, oh, no, no, no, we'll consent to jurisdiction, but the Supreme Court of the United States has already said that that's not enough. And even Dr. Wad, in his analysis, said their consent would not be enough. It would require joint motion and the court may or may not allow it. So there is no forum guaranteed in India. I missed something. There is already a suit taking place here. No, there's a suit by another company. And one of the things that the appellee does... It's a suit that you... No, sir. The suit that he brought against ZS in India. No, sir. There is no suit by... No, sir. That is not so. What there is, is a suit by the Synergy Limited in India against the two individuals for enforcement of the employment contracts. There is no suit between ZS...between our company, Synergy Inc., and ZS Corporation, or any ZS Corporation. You don't think it's significant that ZS said that we will agree to be amenable to suit their... Supreme Court of the United States said it's not significant. And their own expert, Mr. Wad, says that's not enough. It takes a motion and a joint motion and the court may or may not grant it. Furthermore, there's no Lanham Act in India. And furthermore, the standards in India are much less. And it's much, much different. And the relief available in India is very different. I think I took you off a point that I wanted you to address, which is why aren't these two individuals indispensable partners? Because there is no requirement in our complaint. There is no prayer in our complaint. None whatsoever that asks that they be dismissed. There are other protections that can be given. There are other things that can be done. All sorts...the courts have fashioned, in many of these Lanham Act cases, remedies that do not involve firing the people. They involve confidentiality. They involve not allowing trade secrets to be used. They involve all sorts of other... Remember how early in the stage in this case we were at. Mr. Feldheimer, the entire case, this entire case is premised on Zia's hiring these two former Sinji employees who are India nationals. As part of a scheme. As part of a whole program to gain access to some very carefully developed proprietary material. And we're not asking that they be fired. We're asking that the court work with us to develop, to craft a remedy that prevents them from misusing the information or for obtaining the information. Your time is running very quickly and there's still another important issue that has to be addressed, which is foreign non-convenience, which was the other aspect of Judge O'Neill's ruling. Why isn't India a better place to address these issues? I have an American company headquartered in Hershey, Pennsylvania, suing a company with an office on Rocket Street down the street. One of the main witnesses is Shearing Plow, which is in New Jersey within a hundred mile limit. We're all here. You have two individuals who may not even...who are not essential parties, who are not in the case, who are not necessary parties, and they're the only people in India. You're going to require... Just a minute. When you say we're all here, I mean, what evidence is here? All of the evidence that...we're not saying that these two people in India did this. We're saying that the people in the United States, that ZS Management in the United States of America entered into a plan and we believe all of that evidence is here. Their discussions with Shearing Plow is here. Everything is here. You mean the whole thing started here in New Jersey by ZS to orchestrate the hiring of two former CIGI employees in India? I do so, sir. In Illinois. But yes, sir. I absolutely...Your Honor, absolutely. I try a lot of these cases. We'll hear the other side. Thank you, sir. We'll be back. Ms. Danoff. Good morning, Your Honors. Diane Siegel Danoff for the appellees, ZS. I think there are several themes that run through both the forum non-convenience and the indispensable parties argument, which show very strongly that Judge O'Neill's decision was correct, that there was no abusive discretion. And that should be affirmed. I thought Mr. Falheimer made a pretty interesting point. I'm not sure if it's correct. You have to be subject to service in New Jersey in order to be an indispensable party. That wasn't my reading of the case law, but maybe you can shed some light on that. Your Honor, that is not our reading of either the case law or the rule. Indeed, it doesn't make sense. The way the whole structure of the rule works is that if you get to the point that you've decided that the absent party is necessary and you move on to the question of indispensability, then there are certain times when someone can't be joined. And one of the reasons that the rule contemplates in the advisory committee notes that that might happen is when someone is not susceptible to service of process. And that's what we have here, because you have Indian nationals who don't have any connection here and can't be brought in. Can you tell us what the status of the case in India is? Your Honor, there's nothing on the record, and I actually don't have any extra record knowledge beyond what was in the briefing at the district court stage. So to the best of my knowledge and as the record stands, the action is continuing in India. The same two individual defendants who are the subject of this action here in terms of our motion practice are still being prosecuted. It's over the same non-compete. It's over the same trade secrets that are at the heart of this case. All right. Why are the two employees that were hired by Zia's indispensable parties in this case? Your Honor, these two individuals are at the heart of this case because without their alleged actions, there could be no case. The theory of the plaintiff is that these individuals came over and brought proprietary and trade secret information with them and somehow shared it or used it on behalf of my client, Zia's. And so if that is true, that's the only way that they have a claim is if that is true. That is the nexus. That is the heart. That is the locus of the whole cause of action here. And if that hadn't happened, there couldn't have been a lawsuit. So that's why their Indian connection is so important. Mr. Feldheimer says, well, we're not trying to get them fired. We just want to figure out some way to make sure they don't share the information. Well, the way the cause of action is pled, the way the injunctive claim reads and the remedy that's there, even if you excise the part that says fire them, which was indeed there when they filed their motion for plenary injunction, it said very clearly that they wanted these guys to be fired. Take their deposition in India? Yes, certainly their deposition could be taken in a foreign country. Yes, that could happen. But these people's interests are vitally at stake. This is a flesh and blood problem. These people have jobs. And even if the district courts order, let's suppose that we went to trial. Aren't you sort of saying that these people are of no value to ZS without their secrets? So they'll be probably fired? I'm sorry. Are we saying that they're of no value? Yes. Isn't that what you're really saying? No. Their only value is the secrets they have? No, we don't actually. This is part of the record. Let me ask you this. Suppose then why it's not an injunction that you can't disclose any further trade secrets sufficient for both sides, and then they can continue in your employment. Then how are they affected, they meaning the two Indian employees? I think Your Honor raises a good point. It depends on what the relief is that the district court would offer. Suppose it says you can't disclose any further trade secrets. Well, I think that if that were... With that kind of a remedy, how are the absent employees affected? I think that it depends on what the court says and what ZS feels it has to do in order to implement the court's rule. When you say it depends, you can't say now that they'll undoubtedly be affected, can you? I cannot say with certainty that the court will issue a ruling that's at all against my client's interests, and I cannot say that if the court does issue that ruling that it will use language in its order that will definitely require us to fire these guys or to cut back their duties. But I would say that if you give the plaintiff all of the relief that it is currently asking for on the record, that we would have to do that. We'd either have to fire them or we'd have to figure out some way to cut back their duties so much that we'd have to make them janitors or something. I don't know what we would do. So to your point, what if you just said don't share the information? I mean, it's sort of putting the rabbit in the hat in a way because I don't know. The trade secrets have not been identified, so I don't know what this terrible thing is that they've got that they supposedly have shared. So it's hard for me to figure out how to implement that order. But if, as the plaintiff seems to be saying, this is something that's very serious and is going to the heart of the business or whatever, then I suppose we'd have to take pretty drastic measures in order to make sure that all this stuff that either has been shared or is about to be shared somehow hasn't infected our whole system. I don't really know what we would do. Isn't that the subject of the litigation in India, though? The subject in India, yes, it is about these non-competes that these people signed. And by the way, the non-competes that are at issue are the ones that are in the part of the record that my client submitted. The non-compete that is attached to the complaint is not the same one. That's one for the parent. Right. You know, with respect to both the Rule 19 analysis and the form non-convenience argument, the appellant did a pretty good job of methodically going through, aside from the final conclusion, the findings that were not made according to our law. How do we get around that? We may not disagree with you, but he pointed out there's a lot of things that weren't done in terms of the analysis in the district court. What do we do with that? I think that the court below did hit on the key points that it needed to hit on in terms of the public-private factors, what the court went through, went through those. Indeed, you know, the teaching of Piper is that there's a lot of flexibility in the way the whole analysis goes. I think that the court hit on all of the key points and that the underlying record was there in the briefs to support the ultimate conclusions that it reached. And I think if you look at subsequent appellant decisions, subsequent and before decisions, that, you know, courts do give a fair amount of leeway there. And I think that what Judge O'Neill did was well within those parameters. If the case were tried here and Mr. Fellheimer were correct, the case could be heard in New Jersey, do you see a problem with the issuance of an order directing the employees or CIMG's former employees from sharing any information, respecting their employment with ZS, a direct order compelling them not to discuss any of the information they obtained, any proprietary information with ZS? Do you see a problem with that? No. So ZS could get its relief here with an injunction and the two ZS employees would not have to be terminated. I think it's going to depend upon the posture of the case. If it was just that single line that said thou shalt not share going forward, then I think that I have no reason to believe there's been any sharing forwards, backwards, or anyways. But I think that if they were subject to an order like that, that it wouldn't be a problem. You're not going to be able to get them subject to jurisdiction here because they can't be reached here in New Jersey, any place in the U.S., there's not a basis for that. I don't think my client would have an objection to it, but I don't think that these particular people, I think that these particular people deserve to have a say in that. And I don't, you know, it's whether, how our client would choose to. Well, they are current employees of ZS. Yes, on the record they are. Yes, but, you know, there's only, so we can certainly give them some direction in what they can or cannot do in the course of their employment, but we can't force them to come and be part of a lawsuit and be parties to a lawsuit in another country. Well, to follow up, why is it New Jersey a better place? Why is this a forum that's not convenient? Your Honor, there's many factors that go into this analysis, and we have, you know, many of them weighing strongly in favor of India as opposed to New Jersey. But don't we give some pretty strong deference to the forum choice by the plaintiff? There is, you generally start with a presumption of deference to the plaintiff's choice of forum. However, on our particular facts and under the law, that presumption is not entitled to very much weight here. First of all, the cases tell us that when you have a party, as we have here, which is doing business abroad and which has actions in this case that are going on abroad, that that substantially lessens the presumption of deference. Your adversary claims that all the documents and, you know, a lot of the witnesses are right here in the Third Circuit. Well, I don't know what the factual basis is for any of that, Your Honor. What we can tell from the record is that there are people who were hired in India. They live in India. They work in India. They came from a company that was based in India that was Synergy India. So anything that's going on with what they learned there is going to be resident in India at their old headquarters, maybe documents, people they used to work with, et cetera. Those folks are there. Then they moved over to ZS India, the company that's related to my client, and then everything that's associated with their work there, because they always worked in India. So everything that's associated with them is there. You know, they work there, they live there, so their convenience is very strongly in India to the extent that their livelihood is potentially in danger, depending on what the district court would rule in terms of the relief here, assuming that plaintiffs prevailed on the merits in the underlying litigation. You know, if someone's livelihood is affected, it affects potentially not just him but his family, et cetera. So you have, I would say, a lot of evidence. In fact, most of the evidence that I'm aware of would not be here, would actually be there. And, again, going back to the key point that this whole litigation could not succeed on the merits but for the critical thing that happened in India, supposedly. You know, they came over there with all this information and somehow spilled the beans. The non-competes were signed with Synergy India, right? As opposed to the parent here. The non-compete? Yes. Yes, Synergy India. Okay. That's correct. And it says in the contract, by the way, that those secrets, that proprietary information, belongs to Synergy India. So it's a very strong Indian nexus. If Synergy here found out that ZS in the United States basically controlled everything in India through discovery, wouldn't that change the equation? I'm sorry? If Synergy learned through discovery that ZS, the United States, controlled everything that was taking place in India, which is what they were asking for, would that change the equation? No. No, Your Honor. And, first of all, I don't think that what they would have gotten from the discovery that they asked for would have gone to the level of trying to understand what happened with these particular employees in this particular case. That's not what the discovery request would have reached. But even beyond that, all of the nexuses that I just mentioned would still be there, even with the factual situation that Your Honor has just posited. You still have the situation of the Synergy India contract, of the contract saying that the proprietary information is there. You have the company being there, the guys there. There is a major loss here, a loss of a major client in New Jersey that they claim was orchestrated by ZS from its offices, either in New Jersey or Illinois. They do claim that. Shearing Plow, which is the company that's at issue, is not a party. Nobody is trying to make them a party here. And we would submit that that doesn't change the analysis, because all of the more important and key nexuses and just by far the greater weight of all of the contacts and the significant factors are all in India. All right. Thank you, Your Honor. Thank you, Ms. Danoff. Mr. Falheimer? Your Honor, before I go right to Judge Chigaris' question, because I want to deal with that, the emphasis is on the wrong syllable. We did not sue two Indians for leaving our employee and taking trade secrets with them. That's not the suit we brought here. We sued ZS because they sat in a room, developed a scheme to acquire our clients' trade secrets and to use it to compete unfairly. We are asking for relief of this court, of the United States District Court, under a statute which has been determined by the United States Congress, to stop an American company from unfairly competing with another American company. It's all here. They took Shearing Plough up the road. It's all here. What they've done so well, I admire them, is they keep shifting the focus saying, no, no, no, look at those two Indian people. They are the tool, not the means. Let me ask you this. If you were granted discovery, what would that discovery yield that would help you on this foreign nonconvenience issue? I think it would yield, first of all, both of these companies are direct competitors, and what they do is they gather large amounts of data. Every time you buy a prescription anywhere in the world, there is a coding on that prescription. There are companies that capture that coding and deliver it to the pharmaceutical companies. My client takes that data, this humongous, massive data, and develops from it, and organizes it, and develops a report. And the report might be, pay salesman Tashima 12 cents, or Dr. Fuentes wrote 27 prescriptions in March for Lipitor, and it makes it all usable. It's a business that my client developed. My client had an almost, was he almost the only person in it? They did pretty well. They're in Chester, Pennsylvania. What this may have enabled ZS to do is to get into that business. The worldwide nature of this is, we would have gotten into in great detail. Your Honor. I'm failing to follow how Discovery is going to help you on the forum nonconvenience issue. Because, Your Honor, everything is here. Let me go on. This is a 24 hour a day, 7 day a week service. What would you like to learn through Discovery that would help us decide that New Jersey is the best forum? You asked for jurisdictional discovery. I understand that there may be a big conspiracy, but you asked specifically for jurisdictional discovery. Right. The jurisdictional discovery to show, the jurisdictional discovery I would have looked at to show that everything was being funneled here, brought here, used here, under a plan here. Now, that's what the discovery we believe would prove. That we would be able to come into the court in an evidentiary hearing and show that while they may have used an instrumentality through the Indian employees, but in fact it was part of a plan here. The information was brought here, used here, and it wrongfully used here. It was never wrongfully used, in India. It was wrongfully used here. It may have been acquired through an Indian intermediary, their Indian company, but it was used here under a scheme developed here to compete here, unlawfully here, to damage us here. And that's all here. And the courts, an American court shouldn't close its doors to an American company seeking to sue another American company for something that happened here. Can I go to one point that Judge Chigaris raised? With all due respects to the learned court below, in doing forum nonconvenience, the judge never made the analysis. There were four tests that the judge is supposed to analyze. The availability of the alternative forum, the amount of deference to be accorded to the plaintiff's choice of forum, the private interest factors, and the public interest factors. He never even looked at the deference to be paid to the plaintiff's choice of forum and didn't really look at the availability of the alternative forum because he never discussed the fact there was no guarantee we could even get ZS in that court. And remember, we're not seeking to sue the two Indians. We're seeking to sue ZS. The judge never made that analysis. He never made the full analysis. My time is up. Complete analysis on the other matter. Thank you all for your patience and help. Thank you very much. Very interesting arguments. Ms. Anna, thank you also. We'll take the case under advisement. We'll call the next case.